UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DAMON MYERS,

    Defendant.

Case No. 3:21-cr-32

District Judge Michael J. Newman

---

**ORDER: (1) DENYING DEFENDANT'S MOTIONS TO SUPPRESS (Doc. Nos. 38, 48); AND (2) DENYING DEFENDANT'S DUPLICATE MOTION TO SUPPRESS AS MOOT (Doc. No. 39)**

---

Defendant Damon Myers is charged in a two-count indictment with (1) knowingly and intentionally conspiring to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, and (2) knowingly and intentionally attempting to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Doc. No. 6. Myers, through counsel, now moves, in three motions, to suppress the evidence obtained pursuant to a warrantless search and seizure of his wallet. Doc. Nos. 38, 39, 48. The parties have filed respective memoranda in support of, and in response to, these motions. Doc. Nos. 49, 59, 62, 64.

On April 17, 2023, the Court held a suppression hearing. *See* Doc. No. 47. Two officers testified during the hearing: Officer Nicholas Ruffing and Lieutenant Douglas Kopp of the Cincinnati/Northern Kentucky International Airport ("CVG") Police Department. *Id.* The Government also presented a subject identification card and one of the receipts found in Myers's wallet. *See* Gov't's Exhs. 2, 3. The Court accepted the Government's exhibits into evidence. Doc.

No. 47 at PageID 160. The motions are now ripe for review. For the reasons that follow, Myers's three motions are denied.

## I. BACKGROUND

### A. The Arrest at CVG

On March 2, 2021, Myers flew from the Phoenix Sky Harbor Airport to CVG, with a layover at Chicago O'Hare International Airport. Doc. No. 48 at PageID 170. Earlier that day—before Myers's flight arrived at CVG—the Drug Enforcement Administration ("DEA") notified the CVG Police Department of Myers's inbound flight. Doc. No. 47 at PageID 142-43. Kopp testified that DEA Task Force Officer Eli Sauter told him that Myers "had a trafficking charge or history in the past" and was coming to CVG from Arizona. *Id.* at PageID 143. After this conversation, Kopp and/or Ruffing conducted a background check on Myers. *Id.* at PageID 144. During this background check, the CVG Police Department found Myers's Ohio driver's license—containing his picture and date of birth—and learned that he had an active arrest warrant from the State of Ohio. *Id.* at PageID 133-34.

Given the existence of the warrant and their knowledge of Myers's physical appearance, the CVG Police Department decided to locate Myers when he landed at CVG. *Id.* at PageID 114. Kopp monitored Myers's flight gate and saw him arrive. *Id.* at PageID 134. Kopp immediately identified Myers as the person with the warrant based upon Myers's driver's license photo. *Id.* at PageID 134-35. He followed Myers from the gate into the CVG breezeway to confirm that Myers was traveling alone. *Id.* at PageID 135. Kopp maintained contact by phone with Ruffing when following Myers and coordinated with Ruffing to approach Myers. *Id.* at PageID 136.

Ruffing—in police uniform—then approached Myers in the CVG breezeway. *Id.* at PageID 114. Ruffing identified himself as a police officer and asked for Myers's identification. *Id.* Myers complied with this request and provided his Ohio driver's license. *Id.* At some

2

unspecified point, Kopp joined the conversation. *Id.* Neither Ruffing nor Kopp drew their firearms or restricted Myers's movements. *Id.* at PageID 114-16, 139. Even though both Kopp and Ruffing testified they recognized Myers from their earlier background check, Ruffing contacted dispatch over the radio to confirm that there was still an active, extraditable warrant for Myers's arrest. *Id.* at PageID 115. Within minutes, dispatch confirmed that the Ohio warrant remained active for Myers. *Id.* at PageID 116.

Upon his positive identification and confirmation of the existing active warrant, Ruffing placed Myers under arrest and handcuffed him in the CVG breezeway at 7:00 P.M. *Id.* at PageID 115, 151; Doc. No. 48 at PageID 170. Ruffing conducted a cursory search of Myers's person, seized his wallet, escorted him to a police car, and transported him to the CVG Police Station. Doc. No. 47 at PageID 125, 151-52, 156.

### B. The Search at the CVG Police Station

After Myers arrived at the CVG Police Station, Kopp conducted a more complete search of Myers's person and belongings. *Id.* at PageID 125-26, 139. Specifically, Kopp searched the contents of Myers's wallet at the police station in his presence. *Id.* at PageID 140, 158. During that search, Kopp found two receipts that contained information concerning two UPS shipments from Arizona. *Id.* at PageID 140-41, 158. Kopp testified that, based upon his training and experience as a drug interdiction officer, the receipts caught his attention because drug traffickers often ship bulk amounts of drugs in multiple packages through UPS. *Id.* at PageID 141.

The information on the receipts was communicated to Detective Norman Minter, a Narcotic K-9 Officer with the CVG Police Department. Doc. No. 59 at PageID 219. Minter was informed that the two packages shipped by Myers would be at a UPS facility in Walton, Kentucky. *Id.* at PageID 221. Minter conducted further independent investigation of the packages, including a K-9 inspection. *Id.* at PageID 221. The K-9 dog had a positive alert to the odor of illegal

3

narcotics emitting from both packages. *Id.* Minter then presented an affidavit to a Boone County, Kentucky district judge. *Id.* at PageID 219-222. The affidavit included information concerning Myers's flight, the arrest warrant for Myers, the UPS shipping receipts found in Myers's wallet, and a positive alert by the narcotics K-9. *Id.* at PageID 220-21. The judge authorized a search warrant, and upon executing it, officers discovered methamphetamine within the two packages. *Id.* at PageID 217-18.

Myers has moved to suppress all evidence obtained pursuant to the search of his wallet and of the UPS packages, including the UPS receipts and the methamphetamine. *Id.* at PageID 197.

## II. STANDARD OF REVIEW

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "The Fourth Amendment protects individuals against unreasonable searches and seizures." *United States v. Bateman*, 945 F.3d 997, 1005 (6th Cir. 2019) (citations omitted) (quotation marks omitted). While the Fourth Amendment "is silent as to the remedy afforded one whose property is searched or seized subject to a warrant lacking probable cause . . . the 'principal judicial remedy' for Fourth Amendment violations" is the exclusionary rule, which "bars courts from allowing unlawfully seized evidence to be used in a criminal trial[.]" *United States v. Elmore*, 18 F.4th 193, 199 (6th Cir. 2021) (citation omitted) (quoting *Utah v. Strieff*, 579 U.S. 232, 237 (2016)).

A defendant may file a pretrial motion asserting a Fourth Amendment violation and seeking suppression of unlawfully seized evidence. *See* Fed. R. Crim. P. 12(b)(3)(C). Defendants carry the burden to show "a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman,* 606 F.2d 673, 679 n.11 (6th Cir. 1979)).

### III. ANALYSIS

Myers's post-hearing briefs revolve around the search of his person after his arrest. Thus, this case asks two questions: (1) Did Ruffing and Kopp properly arrest Myers pursuant to an outstanding warrant; and (2) Was the search of Myers's wallet a proper search incident to arrest? The answer to both inquiries is "yes." Ruffing and Kopp identified Myers as the individual listed on an outstanding arrest warrant, and properly searched Myers's wallet at the police station after he had been arrested. Assuming, *arguendo*, that the officers' conduct was somehow unconstitutional, the good faith exception applies.

#### A. The Arrest

An arrest warrant supported by probable cause is a judicial mandate that officers arrest an individual, and it is the officers' duty to carry out the warrant's provisions. *United States v. Baker*, 976 F.3d 636, 644 (6th Cir. 2020). In executing a warrant, "an officer may arrest the suspect without personally learning the facts establishing probable cause." *Id.* at 643. Furthermore, officers in one jurisdiction may rely on—and carry out—arrest warrants from other jurisdictions. *Id.* An officer who acts objectively reasonably in verifying and executing an arrest warrant does not violate the Fourth Amendment. *Id.* at 644. An officer must reasonably believe that the arrestee was the person identified in the warrant. *See Hill v. California*, 401 U.S. 797, 802-04 (1971). However, an officer's subjective motivation in executing an arrest warrant is not relevant in determining whether a Fourth Amendment violation occurred. *Arkansas v. Sullivan*, 532 U.S. 769, 771-72 (2001).

Ruffing and Kopp were objectively reasonable in verifying and executing the arrest warrant for Myers. Before Myers arrived at CVG, the CVG Police Department conducted a background check on Myers that revealed his Ohio driver's license—containing his picture and date of birth— and an active arrest warrant from the State of Ohio. Doc. No. 47 at PageID 133-34, 144. When

5

Kopp monitored Myers's flight gate, he saw Myers exit the plane and recognized him as the person with the outstanding warrant based upon his driver's license photo. *Id.* at PageID 134-35. At this point, Kopp had sufficient grounds to execute the arrest warrant because he reasonably relied on the warrant and reasonably believed that Myers was the person identified in that warrant. *See Baker*, 976 F.3d at 644 (finding it objectively reasonable when an officer relied upon a police computer record showing a warrant existed); *Hill*, 401 U.S. at 802-04 (holding that officers did not violate the Fourth Amendment when they arrested an individual based upon a reasonable, good-faith belief that the arrestee was the person sought because he matched the description and location of the suspect). It is irrelevant whether Kopp or any other CVG officer may have had a subjective motivation to investigate Myers based on the DEA tip that he had a drug trafficking history. *See Sullivan*, 532 U.S. at 771-72 (holding that an officer's alleged subjective motivation to search for narcotics was irrelevant because the officer stopped and subsequently arrested the suspect based upon probable cause of traffic law violations). Once Kopp positively identified Myers as the person with the outstanding warrant, he could stop and arrest Myers without further evidence of reasonable suspicion or probable cause. *See Baker*, 976 F.3d at 644.

Additionally, it is reasonable for an officer to request identification from a suspect to verify that the person is the individual listed in a warrant. *Id.* at 643. A request for identification, by itself, does not constitute a Fourth Amendment seizure. *Id.* Although Kopp could have arrested Myers at the original time of identification, he took additional precautions to confirm that the warrant was still active, and that Myers was the person identified in the arrest warrant. He contacted Ruffing, who then approached Myers in the CVG breezeway. Doc. No. 47 at PageID 114. Ruffing acted reasonably—and did not execute a Fourth Amendment seizure—when he

6

asked for Myers's identification, and Myers complied with this request.[1]  *Id.*; *see Baker*, 976 F.3d at 643 (holding that an officer did not seize a suspect under the Fourth Amendment when requesting his identification in an area where the officer was already lawfully present).  Even though both Kopp and Ruffing testified that they recognized Myers from their earlier background check, it was reasonable—and good police work—for Ruffing to contact dispatch over the radio and confirm that there was still an active warrant for Myers's arrest.  Doc. No. 47 at PageID 115-16; *see Baker*, 976 F.3d at 644-45 (explaining that it is reasonable, but not necessary, for an officer to contact dispatch to confirm a warrant remains active).

Accordingly, the CVG officers' arrest of Myers pursuant to the warrant did not violate the Fourth Amendment, and "the fruit of the poisonous tree doctrine does not apply to exclude any of the evidence obtained as a result of the arrest." *See United States v. Kendricks*, 127 F. App'x 836, 843 (6th Cir. 2005).

### B.  Search Incident to Arrest

In general, after an individual has been arrested, officers may search the person and personal items carried by the arrestee. *Riley v. California*, 573 U.S. 373, 391-93 (2014).  While the Supreme Court has held that search of data stored on a cell phone goes beyond the scope of a search incident to arrest, *id.*, searching an arrestee's pockets, cigarette pack, wallet, or purse is typically permitted. *Id.*  The Sixth Circuit has clarified that the search "incident to the arrest need

---

[1] The Court finds that, because the officers could have executed the warrant for Myers's arrest, it is unnecessary to analyze whether there was reasonable suspicion to justify stopping Myers under *Terry v. Ohio*, 392 U.S. 1 (1968).  However, even without the arrest warrant, the officers' initial interaction with Myers was consensual and not a violation of the Fourth Amendment because a reasonable person would have felt free to terminate the encounter. *See United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004) (holding that the defendant would have felt free to leave when: (1) she was approached by officers in a public area of an airport; (2) an officer asked her for her identification; (3) she complied with that request; and (4) the officers did not display their weapons or restrict the defendant's movements).

not take place immediately after or at the site of the arrest."[2] *United States v. Smith*, 549 F.3d 355, 360-61 (6th Cir. 2008).

The search of Myers's wallet at the police station was within the scope of a proper search incident to arrest. When Myers was arrested, Ruffing conducted a cursory search of Myers's person, seized a wallet from his person, and transported him to the CVG Police Station. Doc. No. 47 at PageID 125, 151-52, 156. After Myers arrived at the CVG Police Station, Kopp conducted a more complete search incident to arrest of Myers's person and belongings, including Myers's wallet. *Id.* at PageID 125-26, 139-40, 158; *see Smith*, 549 F.3d at 360 (holding that the search of the defendant's person at the police station "within a few hours of his arrest constituted a lawful search incident to the arrest"). The fact that Myers and his belongings were "not thoroughly searched until he was booked is immaterial." *See United States v. Craig*, 198 F.App'x 459, 463 (6th Cir. 2006).

Officers may inspect, review, and read any words or information on the belongings carried by the arrestee during a search incident to arrest. *See Riley*, 573 U.S. at 394-95 (indicating that an officer may review "a slip of paper" from an arrestee's pocket to determine what is written on it); *United States v. Torres-Ramos*, 536 F.3d 542, 556 (6th Cir. 2008) (concluding that it was legal for officers to read receipts found on an arrestee's person to connect the arrestee to information provided on the receipts). During the search incident to arrest at the CVG Police Station, Kopp

---

[2] The standard for searching an arrestee's person and the belongings carried on their person is different from the standard for searching an arrestee's surroundings in a vehicle context. *Riley*, 573 U.S. at 398 (clarifying that the holding in *Gant v. Arizona*, 556 U.S. 332 (2009) is generally limited to searches incident to arrest in the vehicle context). Myers relies on a recent opinion from the Eastern District of Michigan that extends the holding in *Gant* to the warrantless search of a defendant's luggage bag at a bus station, but the Sixth Circuit has not extended *Gant* to searches incident to arrest outside the automobile search context. *United States v. Vining*, No. 2:21-CR-20715, 2023 WL 3720911 at *12-13 (E.D. Mich. May 20, 2023). Additionally, *Vining* concerns the search of a bag that was not near the defendant at the time he was arrested and does not address the search of items found on the defendant's person. *Id.* at *13. Consequently, *Vining* is factually distinguishable from the present case.

8

found two receipts in Myers's wallet that contained information concerning two UPS shipments from Arizona. Doc. No. 47 at PageID 140-41, 158. Based upon Kopp's training and experience as a drug interdiction officer, the receipts caught his attention as potential evidence of drug trafficking. *Id.* at PageID 141. Kopp's inspection of the receipts was thus part of a lawful search incident to Myers's arrest, and the evidence gathered by the receipts should not be suppressed. *See Riley*, 573 U.S. at 394-95; *Torres-Ramos*, 536 F.3d at 556.

### C. Good-Faith Exception

Assuming, *arguendo*, that Kopp obtained evidence of the receipts in violation of the Fourth Amendment, the exclusionary rule would not apply to suppress the evidence found in the UPS packages because the detective who later searched the packages relied in good faith on a search warrant. *See United States v. Leon*, 468 U.S. 897, 920 (1984). In *Leon*, the Supreme Court held that the Fourth Amendment exclusionary rule should not apply where evidence is "seized in reasonable, good-faith reliance on a search warrant." *Id.* at 905. When officers discover evidence after obtaining a search warrant, even if the warrant lacked probable cause, the good-faith exception precludes suppression unless: (1) the warrant affidavit includes statements that the affiant knew or should have known were untrue; (2) "the issuing magistrate wholly abandoned his or her judicial role;" (3) the warrant affidavit is "bare bones" or lacks any indicia of probable cause; or (4) "the warrant is so facially deficient" that it would be unreasonable for police to think it was valid. *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004).

The *Leon* good-faith exception applies when "the officers who sought and executed the search warrant[] were not the same officers who performed the initial warrantless search, and [the] warrant affidavit fully disclosed to a neutral and detached magistrate the circumstances surrounding the initial warrantless search." *United States v. McClain*, 222 F.3d 556, 566 (6th Cir. 2005) (holding that evidence should not be excluded—despite an earlier Fourth Amendment

9

violation—when "the officers who sought and executed the search warrants acted with good faith, and […] the facts surrounding the initial warrantless search were close enough to the line of validity to make the executing officers' belief in the validity of the search warrants objectively reasonable"). Here, the detective who sought and executed the search warrant for the UPS packages—Minter—was not the same officer who performed the initial warrantless search of Myers's wallet, and Minter's affidavit disclosed to a neutral and detached state court judge the circumstances surrounding the initial search of the wallet following Myers's arrest. Doc. No. 59-1 at PageID 119-221. Further, the warrant affidavit included the additional information that a K-9 had a positive narcotics alert for the packages. Doc. No. 59-1 at PageID 221. Thus, Myers's arguments—seeking to suppress the contents of the UPS packages as fruit of the poisonous tree—fail because Minter sought and executed a search warrant for the packages in good faith.

## IV. CONCLUSION

Based on the foregoing reasons, Myers's two motions to suppress (Doc. Nos. 38, 48) are both **DENIED**. Myers's third motion to suppress (Doc. No. 39) is **DENIED AS MOOT** because it was filed as a duplicate of Doc. No. 38.

**IT IS SO ORDERED.**

  January 3, 2024                                      s/Michael J. Newman
                                                                         Hon. Michael J. Newman
                                                                        United States District Judge